in sequence to one just a second to one zero thank you both of you now we're now we're at Laura thank you counsel we have a lot of ground to cover but I can cut to the chase and get to where I think we know need to go pretty quickly this is a what appears but we have certain rulings by the court in two very significant decisions that kind of give us a road map of where we need to go now specifically Judge Browning had ruled that the search of November 20th 2012 was unconstitutional he's the words unlawfully legal he also ruled that November 27th search based on 10th Circuit precedent particularly in Kerry Burgess and other cases was unconstitutional so you have two unconstitutional searches and this search started out to try to find email communications relating to a case known as Susanna Gate where former aide of Governor Martinez kept the domain name and was stealing her emails and filtering them to the Democratic Party a lot of kind of interesting stuff going on and so it gets reported to the FBI and they decide to investigate and here we run into one of our very first problems in the case they get a but later we find out when the case is progressing that in the report of the examination for the first time we learn as the case is going on that under the request we find out on November 14th 2012 Special Agent Michael Bode requested the above listed specimen which was the fruits of the November 27th the evidence also be examined for evidence of child pornography for NCP possession and receipt so all of a sudden that triggers something in one's mind that does this type of work was it was there a pretext here to look for the Susanna Gate email but wasn't there a statement that that that if you're reading the email that I'm recalling and this is a different one wasn't there something that was written after the fact and was kind of a summary of the entire set of transactions well sure that's what she is claiming in his testimony but that's not there's no record or is there a date is there a date on that email that would know that this is this yes there is a report date this date the February 28 2013 so that was after all of these events exactly exactly and if you just do a plain reading at least to me it appears that he's talking about and I don't see where he says this comes later if you read in context he says in addition to look for child pornography which I didn't do but in any event this comes into play later when we talk about inevitable discovery and good faith which is where we ultimately need to go so Judge Browning conducts a very extensive hearing on the motion to suppress he reluctantly and I think that's a fair interpretation determines that he needs to follow 10th Circuit precedent even though he questions the soundness of the case precedent that you all have created in suppressing the fruits from the November 20th search then what happens chronology in this case the agents go to execute the warrant they look at a couple disks see what they believe to be CP they don't stop right away so that's the basis for the for Judge Browning suppressing the fruits or finding well he didn't suppress them he ultimately lets them in but the basis for him then what the FBI does agents Cravens and Nishida they take the disks and the laptop back to the laboratory where it sits for a number of days now that Cravens who's almost a self-proclaimed expert in his affidavit later we'll talk about that he decides that he needs more of a descriptor to seek an application for a second warrant so without getting the application for a second warrant or a second warrant he basically continues the first search now it's in debate whether he searched for two and a half hours or what was the exact time that he was searching but it appears he does a pretty thorough exam of the CDs and laptop in order to come up with a description that later he uses in his affidavit if we find that that second search is a directed and unauthorized search can we look at the affidavit and strike any references to what he found in that second search and then evaluate it for whether that affidavit was supportable sure you can and that's what the case law says and if you strike the offending material there's no problem at all the offending material is the stuff found in his second search yes because we haven't I mean I think it's a lot harder question to say that the first search was inappropriate since I believe that they weren't directing the first search towards obscenity that when they were directing it towards this communication with the governors in file and when they found stuff they set it aside they didn't direct it which is what I think the tenth circuit law says is okay but we'll address all that I know that's an open issue but if we kept anything they discovered in the first if we kept everything in the affidavit except that second reference do you think there was adequate affidavit to support the warrant? no no because once you excise the offending material from the application for the second warrant it goes on and on about I'm agent Cravens I know all this stuff I'm not putting him down I know agent Cravens real well he's a fine man and talks about computers and how they work and how this stuff is stored etc. etc. then he gives the description specifically towards the end of the affidavit depicting the child pornography as Judge Browning held correctly that information was the fruit of the second search so you're representing that every explicit statement about pornography discovered was the result of the second search yes because they didn't know I mean they did find pornography in the first search but the affidavit doesn't mention that no it doesn't okay now Cravens thought and she thought they saw some pornography maybe they did maybe they didn't but in the second application they're describing the contents of their November 27th search but in the first search they did discover there was pornography there they didn't discover what it was or the details of it but in the affidavit which I have not looked at it didn't say the first search we inadvertently discovered evidence of pornography no so the district court falls back on the good faith and inevitable discovery rules right what's wrong with that well I'll tell you what's wrong with that because neither one of them are applicable first of all regarding the good faith let's talk about the November 20th search even though in the application for the search warrant for the second search they don't talk what Judge Abell just asked about saying that they stumbled across something in the first search and just to clarify that in Judge Browning's cover portion or the early portion of his order on the motion to suppress he did say that the second search and the first search were constitutionally infirm those are my words he said they were illegal or unlawful but this is important though too in his opinion at page 52 he says upon questioning by the court the United States conceded that the inevitable discovery of good faith exceptions did not save any problems with the November 20th search I'm sorry 2012 search I'm sorry I'm sorry I mean all I can't see just go ahead I feel your pain I just want you to repeat what you said sure so we don't have to worry about I don't think anything about good faith or inevitable discovery regarding the first search first of all you gave us that explanation away from the mic and neither judge was there or no yeah well first of all it wasn't in the subsequent application second the United States let's back off okay slow down I'm afraid I may have no no no rushed you to a fire no I'm fine why don't the good faith and inevitable discovery rules apply okay for the first search the United States even conceded on the record under question in the passage I just read that good faith and inevitable discovery do not apply to the November 20th search that was conceded it does not apply to where is that concession it's at page 52 of Judge Browning's order and it's in the transcript but that's not the issue before us the issue is whether the second search would have been inevitably discovered on good faith right so now we're on the second constitutional violation and that's the search of November 27th and why that search why there's no inevitable discovery or good faith is for a number of reasons first of all the affidavit that was submitted to Judge Schneider is deficient facially and I think based on the case law because once you excise the material that's described in that application there's no probable cause on that point on that point the four images that are referenced in the affidavit are those the same four images that were found on August 20th on November 20th is it November 20th Judge Phillips I don't know what was found on November 20th they don't ever really tell us ever what was so there's nothing in the record because that would matter to me if he had just gone back and looked at the same four images that he had found the first time and to better describe them no I don't believe that that's that is contained herein I mean it's part of the record and he doesn't talk about looping back to November 20th that I've seen ok so then we're down to we're down to inevitable discovery is the key issue so maybe we ought to really right ok inevitable discovery should not apply either because when we look to see if there was any kind of objective reasonableness we certainly don't find that we don't find why do you need objective reasonableness you simply have to know that they found enough in the first search that with the documents in their possession it's inevitable that they would have gone back for a second warrant well I can't say that for sure because we have to look at the United States versus Sousa factors as well Judge Abell and when you apply the United States versus Sousa factors and it's well briefed by both parties it leans in favor it doesn't lean I think it tumbles in favor of the defense position that this was not inevitable discovery and that why well because looking through the Sousa factors did the FBI jump the gun absolutely what was the status of the search when the new warrant was issued well they're conducting an illegal search that cuts in our favor or in the favor that's not obvious if there was anything illegal until that second search we would say we're going to throw out that second search but you would have still gotten a warrant to do a legal one well but also your honor that goes I think to the Sousa factors is the fact that the warrant they did ultimately try to get based on excising the impermissible information because you have to remember Judge Browning did find both searches illegal so when you excise that information but I'm now postulating we might disagree with Judge Browning on whether the first search was illegal if you might but then I'm trying to determine but you're saying no that even if that were the case all the evidence that was presented was based on the second search which was illegal and we might agree with you on that except we have to ask would there have been a third search inevitably proper and so then we look at the Sousa factors under that scenario why does Sousa help you rather than helping the government well just as I said when you go over the factors Judge Ebel I think they clearly cut in favor of the defendant when you look at each factor and in fact Judge Browning which factors well Judge Browning why don't you develop the Sousa argument well certainly and based on my time I can't do it as well as I'd like if you can okay we certainly we certainly put it in the brief but the Sousa factors and I will one of the factors is did the government quote jump the gun well yes they jumped the gun they started they continued the illegal search from the 20th on the 27th when they had plenty of time to go and get apply for a warrant they didn't do that another factor is what part or where were they in the proceeding when they could have got a second warrant well they clearly could have gone or applied for it at any time before coming across the other illegally seized material that cuts in our favor what purpose does it serve is it more in the societal interest to let inevitable discovery occur or is it more in the this is a series of continuing constitutional violations including the fact there is no probable cause in this warrant application once you excise the material so you basically have one huge warrantless search finally under rule 41 Judge Brown says he can never envision a search that could ultimately happens is this was a complete warrant that's the operative word today we are  enforce the clock did I say it yes you did thank you time is up I'm being abrupt I apologize morning your honor my name is Christopher Houghton I'm from the district of New Mexico it's an honor to be with you here this morning on behalf of the United States are they the same four images referenced in the search warrant affidavit as we're seeing on November 20th what establishes that in the record I was going to take you right so if you look let's see this is page 10 of the so on the second affidavit for the second search warrant so I guess the affidavit to the second search warrant and the court looks at what is pellet documents this is volume one and this would be page 49 there's page what 49 49 the section starts with details of the investigation paragraph 20 there at the end talks about the execution of the first search warrant November 20th 2012 says on November 20th at approximately 735 a.m. the FBI executed the search warrant the next paragraph goes on to describe what the agents found with respect to child pornography during the execution of that triage on November 20th that in paragraph 21 says that during the preview meaning November 20th the examiners identified four different ones what establishes they're the same so you'll have to look at volume three of the record where agent Cravens testified but I can tell you agent Cravens could not give the court nor the United States any conclusive answer about whether they were the exact same images and here's why the testimony about this November 20th search warrant was that the agents were laser focused on simply getting the evidence identified by the first warrant so they were asking themselves what is generally responsive doing a cursory review when they ran across the images of child pornography one image on four disks so is the answer that we don't know if they're the same form that's right your honor and that's because they weren't interested in child pornography on November 20th when they ran into evidence of child pornography they simply closed those CDs and put them aside to be taken back to the forensic lab to be examined later but your statement appears inconsistent with what the appellant said you are quoting the affidavit for this search warrant as saying in the  United States versus Simpson 152 F3D 1241 it's a 1998 case and in that case this court actually said that using the term child pornography needs no expert testimony it doesn't need any special experience it's a term we all know and in that case this court held that without a specific description of the images without addending the images to the affidavit it was sufficient for probable cause finding and here you have the  where the agent included a definition of child pornography much more narrow than the statutory definition I believe he said what he meant when he was saying he saw child pornography on November 20th as they were doing this preview it was minors engaged in sexually explicit conduct different from the cases that Mr. Loera cites about when you just generally use the term child pornography you could be referring to pictures of minors and it is more narrow and he actually specifies his experience in this realm has experience with child pornography cases and then talks about not only does he identify child pornography on November 20th but he says the examiners and he's referring here to appear to contain images of child pornography and I gather that's what you're relying on. The examiners are an FBI certified computer forensic examiner and a computer analysis response team technician who he doesn't identify that that's him. He just says these are the   child pornography and he says the other people did that. So what we have is him  something in that disks not images appear to contain child pornography. Do you think that's a probable cause? Yes, your honor, and I do   a probable cause. It's really based primarily on Simpson, but if you look at the way this court since Simpson, United States v. Edwards, United States v. Heyman, look at the way this court's characterized the Simpson holding and what it says is that a general use of the term child pornography is sufficient for probable cause. And I would just point the court also to paragraph six of that affidavit which is where he defines what he means by child pornography. And that's the definition I was just giving the court. But he's not saying he saw it. The affidavit describes himself being an analyst and he's describing someone being a forensic analyst and himself being a CART examiner. And then he says during the execution of the search warrant FBI certified forensic examiner and a computer analyst response team technician. That's the way he describes the images of child pornography. In addition to those points, your honor, he described a specific place where they were, a specific place in the terms of media where they were looking and he also made two assertions to the magistrate about what to expect in terms of the other media given that there were no evidence of child pornography on these four disks. That under Simpson and this case's precedent since Simpson, we believe establishes probable cause particularly in the way that this court reviews that determination which is one of great deference to the magistrate court. All this court has to find is that there is a substantial basis for the magistrate to have found that and in doing so in determining whether there's probable cause that there's just a fair probability that child pornography is going to exist in the places where he's looking at it. I'll take the court back if I may to the first issue which I think is probably the most important issue in terms of affecting other precedent. The United States knows that this court could just jump to good faith or inevitable discovery. The record fully supports it. In Judge Browning's 120 factual findings you will find nothing in there and nothing in the record to support any claim of bad faith. These agents were trying their best to get out of Loera's residence. He wasn't the only resident of the house. He wasn't the owner of the house. You'll learn that in the record. They were simply trying to triage the material as quick as they could and return the house and media that was not covered under the warrant back to its lawful owners. So the court could jump there. We would ask the court to make findings on the first issue which is what is constitutionally required of law enforcement when they run into evidence of a crime not contemplated by the search warrant. I was struck by Judge Ebell's comment in the first argument opposed to the appellant that you're asking him are you really saying that somebody has to go run during one of these search warrants at a location simply because they run into evidence of another crime that really underscores the unreasonableness of such a requirement. I don't think this court's precedent requires that. What do you think is the test? If we were to look at those three cases, Cravens, particularly Burgess, and Walser, in a sense, what would you say officers legally can do when they are pursuing a search warrant for one specific purpose and inadvertently encounter evidence of a separate crime? When is that inadvertent observation permissible? I think Horton's dispatched with the inadvertence requirement, but to answer your question, United States versus Cary simply held that what the officer did there was unconstitutional. Now, mind you, in Cary, Burgess, and Walser, we are at a point where the laptops or  computers in the court are in a fluid situation, they don't know where things are, and they're trying to return the house and the media that's not responsive to the warrant back to them. So that's my first caveat to it. But I think this court has already said it in its concurring opinion. The concurring opinion in Judge Baldock said if the officers simply go on conducting a lawful search warrant, looking for evidence of that lawful search warrant, and not even that much, but simply being in a place where the search warrant allows you to be in a duration where it allows you to be that a different result should have been required. And so that concurring opinion in Judge Baldock is the one that I would ask this court now to impose on this case. Well, I didn't get a very clear statement. Are you arguing that the statement should read something to the effect that so long as the activity is directed towards the law,    towards the law? No, Your Honor. Well, what is it? Then articulate what you say. You don't want us to rely on plain error here or inevitable discovery or something else because you're so eager that we clarify the law. Tell us in a sentence what you would think the law should say. So the court has to be careful of Horton. We'll be careful. We promise we'll be careful. Just tell us what sentence do you think you're trying so hard to get us to clarify the law. You've surely thought about it. You've probably written it down on the palm of your hand. Tell us the sentence you would like us to say is the current Tenth Circuit law. Sure, Your Honor. So long as law enforcement officers are in the place where they are authorized to be by the search warrant for a duration that they are authorized to be there, the fact that they've run into evidence of another search warrant. That sounds like the filing cabinet rule that is rejected in those cases. Your Honor, I don't think it's the filing cabinet rule, and I actually think if you look at this Course President since Kerry, you will see a very similar jurisprudence on Fourth Amendment to the physical realm. I would point this court to United States v. Giberson, the Ninth Circuit case it cites Kerry, and it discusses applying such a rule. In that case, it's almost on all fours with this one because as they're conducting this fluid search warrant, doing a cursory review to figure out what evidence is and isn't included in the warrant for later use, this court should impose which is, so long as you're there, and really I think what this court is getting to, the nuance between technology and the physical realm, that gets decided with the particularity that's specified in the search warrant. That is also something – Are you trying to equate then the electronic search with the physical search, so that, for example, if I'm searching for guns, and I'm authorized to search for guns, going to a room, searching for guns, pursuing to the warrant, and I find drugs on the counter, I don't need to disregard the fact that I found drugs. Are you just saying that electronic search is the same? No. I think this court was correct in pointing out some of the concerns that we have about technology. For one, if you're looking at a physical container, it's easy to determine what can and can't be in there. It's not true in the electronic realm, but I still think the test should be one of, are you in a place where you can search, in a time when you can search? Now, in the electronic realm, case by case, this court can decide what's reasonable, because ultimately that's the touchstone. And I see I'm out of time. Thank you. Thank you,  Thank you.